IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **TIEL JENKINS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMEDISYS HOLDING, L.L.C. D/B/A** | § | **CIVIL ACTION NO.: _____** |
| **ASANA HOSPICE, AN AMEDISYS** | § | |
| **CO.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendant.* | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Tiel Jenkins ("Plaintiff" or "Lockhart"), complains of Defendant Amedisys Holding, L.L.C. d/b/a Asana Hospice, An Amedisys Co. ("Defendant" or "Amedisys"). For causes of action Plaintiff shows the Court as follows:

### I.

### INTRODUCTION

1.01   Defendant wrongfully fired Plaintiff from her job in violation of the ADA and the ADA Amendments Act of 2008 (the "ADAAA") and discriminated and retaliated against Plaintiff, for asserting her rights under the ADAAA, as well as interfered with her rights.

### II.

### PARTIES

2.01   Tiel Jenkins is an individual who is a citizen of the State of Texas.  Plaintiff can be contacted in care of her undersigned counsel.

2.02   Defendant Amedisys Holding, L.L.C. d/b/a Asana Hospice, An Amedisys Co. ("Defendant" or "Amedisys") is a foreign limited liability company which was operating a Texas office located at 6300 Ridlea Place, Suite 1107, Fort Worth, Texas 76116 and can be served through its agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III.

## JURISDICTION AND VENUE

3.01   Pursuant to 28 U.S.C. §1331, jurisdiction lies in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law, including violations of the ADAAA.

3.02   Venue for Plaintiff's causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. §1391.

3.03   Venue is proper as Plaintiff lives in this district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## IV.

## FACTUAL ALLEGATIONS

4.01   Plaintiff was hired by Defendant in July 2018 as a Manager of Volunteer Services on a part time basis.

4.02   In June 2019 Plaintiff was promoted to full time with a salary of $55,000 annually. Plaintiff informed her supervisor, Melissa Heiss, Director of Operations, that she has Multiple

Sclerosis.

4.03   In December 2019 Defendant had been sold to Amedisys.

4.04   In April 2020 Plaintiff's supervisor, Melissa Heiss was terminated.

4.05   In or about May 2020 Carol "CJ" Hardwick, was hired to replace Melissa Heiss as Director of Operations and Plaintiff's new supervisor. All staff were limited at going into the building due to COVID and employees rotated working in the office.

4.06   In August 2020 Jamie Graves, Clinical Manager and Lori Elliot Business Office Manager resigned.

4.07   CJ asked Plaintiff if she knew anyone interested in the position and Plaintiff contacted a couple of people. Two weeks later Plaintiff was asked if she would be interested in taking the Business Office Manager position. Plaintiff discussed her health condition and stated she would apply only if Stephanie Morales, Business Office Specialist and Plaintiff could split their shifts on coming into the office with both of them working half days from home. CJ asked Plaintiff to speak to Stephanie which Plaintiff did. They both agreed upon a schedule. On August 28, 2020 Plaintiff applied for the position of Business Office Manager.

4.08   On September 9, 2020 Plaintiff was hired as the full time Business Office Manager with a salary of $31.73 per hour.

4.09   The new Chaplain, Mary Lawrence started September 14, 2020.

4.10   In October 2020 Plaintiff and Stephanie went to half days in the office. Talk began circulating about Defendant eliminating the Business Office Specialist, Stephanie Morales' position.

4.11   On November 2, 2020 Stephanie Morales put in two weeks' notice of resignation. The company accepted her resignation and made it effective immediately instead of two weeks.

Plaintiff was assigned that role with only 4 hours to train when Plaintiff was still not fully trained for her current position.

4.12     On November 3, 2020 Plaintiff reached out for help from another Business Office Manager who was supposed to be her designated person to ask for assistance regarding her new position.  However, this Business Office Manager helped Plaintiff by emailing her a 781 page manual instead of answering Plaintiff's questions or training Plaintiff.

4.13     On November 11, 2020 Plaintiff spoke with Stephanie Nebelski who called to speak to CJ who was not in the office and then asked how Plaintiff was doing.  Plaintiff told her that she was stressed because she did not have the proper training. She was only emailed a 781 page manual.

4.14     Cheri Knight Dottori, Regional Director of Operations informed Plaintiff that she could no longer work from home because no other care center is doing it.  Plaintiff had to be at the care center every Monday – Friday, 7am to 5pm.

4.15     On November 12, 2020 Gary Walker, Vice President of Area Hospice Operations called Plaintiff and asked her how she was going.  Plaintiff told him that she was stressed because she needed training.  He then proceeded to tell her about a new potential Director of Operations.

4.16     On November 13, 2020, Cheri asked Plaintiff how she was doing.  Plaintiff told him that she was stressed because she needed training.  Cheri replied, "Do I need to call Dr. Rezaie and ask for a prescription for Xanax for you?"  Dr. Rezaie was the MD at Defendant.

4.17     On November 13, 2020, CJ resigned.

4.18     On November 16, 2020 the new Clinical Manager, Eva Ozurigbo started.

4.19     On November 19, 2020 HR called the office to speak with staff about allegations mentioned by CJ.  CJ's allegations were in regard to bullying, harassment and lack of training.

Plaintiff provided her statement. Plaintiff agreed with CJ's training issue because she was dealing with lack of training also.

4.20    Sometime in November 2020 Plaintiff contacted her region's HR Thanh Ngo for an accommodation request (flexible schedule due to her being diagnosed with MS) since she did not have anything in writing from previous supervisors. Ms. Ngo told Plaintiff to contact EAP (Employee Assistance Program). Plaintiff had an initial phone conversation followed up by an email with EAP on December 4, 2020 for clarification on a few things.

4.21    On December 4, 2020 the new Director of Operations, Jacqueline Williams started.

4.22    On December 8, 2020 Plaintiff had a phone appointment with nurse practitioner Dolly Barter for her mental health. She started Plaintiff on paroxetine.

4.23    Plaintiff had until December 17, 2020 to get her accommodation paperwork turned in. The nurse practitioner had completed Plaintiff's forms because Dr. Nair was out on vacation at the time and the papers had to be completed by a certain time frame.

4.24    Between November 23, 2020 and December 4, 2020, Plaintiff had several conversations with Dorothy "Dot" Sherrod about missing admission paperwork for a patient that was going on a week past the due date. Cheri was the person who did the admission and was getting the paperwork signed. It never made it to the office. After days of no paperwork Cheri stated that she met with the family member at Starbucks and that she would fax it to Plaintiff once she got back to her regional office. She was still in Fort Worth and could have dropped the paperwork off before leaving. Once the paperwork was received Plaintiff sent it to Dot to review and she questioned the validity of it as did Plaintiff. She informed Plaintiff to file a compliance complaint. Before Plaintiff did that, she called the family member and had a general question inquiring about service so far and then asked about meeting with Cheri to sign those documents in

which the family member denied. Plaintiff proceeded with the compliance complaint on 12/4/2020. Plaintiff was questioned by upper leadership as to why Plaintiff didn't speak with the employee first. An investigation led to employee being terminated.

4.25   On December 31, 2020 Plaintiff received an email stating that she would not receive an accommodation because she was not a qualified disabled person.

4.26   On December 31, 2020 the patient was admitted and Plaintiff had a conversation with the nurse in regard to whether or not a facility patient has to keep the facility doctor as their doctor or if they could choose the facilities doctor. Plaintiff informed the nurse that the patient could choose. Plaintiff also explained to the travel nurse that the facility doctor and Defendant's Medical Director at the time were the same person.

4.27   Plaintiff took a PTO on January 4, 2021 and was not in the office.

4.28   On January 5, 2021 Plaintiff returned to the office with several consents on her desk as there were several admissions of patients between December 31, 2020 and January 2, 2021. Plaintiff uploaded all forms as is. There were several email exchanges about paperwork from Tina Kolb, CPC regarding errors in documents. Plaintiff corrected errors and re-sent them.

4.29   Tina emailed back and stated the Election of Benefits form did not have a Witness/RN signature or date. Plaintiff emailed back and asked Tina how the care center needed to address/correct the missing Licensed Professional signature date? Tina emailed Tricia that Tiel had contacted her and was needing clarification on the procedures. Plaintiff was then put on administrative leave so they could investigate.

4.30   On January 8, 2021 Plaintiff was asked to provide her thoughts on what happened regarding the paperwork and she did.

4.31   On January 28, 2021 Plaintiff was terminated. Her termination letter stated that she

backdated an Election of Benefits form, which she did not do. The date was the same date. In addition, Plaintiff was never trained properly. Instead of someone training her, she was given an over 700 page company manual.

## V.

### FIRST COUNT

### DISABILITY DISCRIMINATION, RETALIATION, HARASSMENT AND HOSTILE ENVIRONMENT IN VIOLATION OF THE ADAAA INCLUDING FAILURE TO ACCOMMODATE

5.01.   The foregoing paragraphs of this Complaint are incorporated in this count by reference as fully as if set forth at length herein

5.02.   Plaintiff is disabled, as defined by the Americans with Disabilities Act (ADA); See 42 U.S.C. §§121102, 12111(8) as amended. Plaintiff suffers from Multiple Sclerosis. Plaintiff was otherwise qualified to perform the essential functions of her job.

5.03   Plaintiff is an employee within the meaning of the ADAAA (see 42 U.S.C. §12111(4).

5.04   Defendant is an employer within the meaning of the ADAAA, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

5.05   Defendant was subject to the provisions of the ADAAA. Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's work site for twenty (20) or more work weeks in the prior or current calendar year.

5.06   Plaintiff timely filed with the Equal Employment Opportunity Commission and the Texas Human Rights Commission a charge of discrimination for disability and retaliation against

Plaintiff. Plaintiff received notice of the Right to Sue from the E.E.O.C. within ninety (90) days of the filing of this Complaint. A copy of the Notice of the Right to Sue letter is attached hereto as Exhibit A.

5.07   Defendant violated the ADAAA by intentionally discriminating against Plaintiff based on her disability. Defendant's discriminatory acts include retaliation, harassment and hostile environment, denial of reasonable accommodations and termination.

5.08   Defendant discriminated against Plaintiff by discriminatory failure to accommodate by refusing to allow Plaintiff to work remotely. Although Plaintiff requested these accommodations, Defendant did not make them. (see 42 U.S.C. §§12111(9), 12112(b)(5)(A).)

5.09   As a result of Defendant's actions, Plaintiff has found it necessary to hire the services of the undersigned attorneys, for which Plaintiff seeks further relief.

## VI.

## JURY DEMAND

6.01 Plaintiff demands trial by jury on all issues raised by this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have the following relief against Defendant:

1. Judgment for back and front pay and all past and future lost benefits;

2. Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

3. Compensatory damages for the humiliation, damage to reputation, mental and emotional distress, and pain and suffering Plaintiff has experienced and endured as a result of the discriminatory and retaliatory actions of Defendant;

4. Damages for past and future mental anguish and emotional distress and damages to reputation;

5. Exemplary damages in an amount determined by the trier of fact;

6. Prejudgment and postjudgment interest at the maximum legal rate;

7. Preliminary and permanent injunctive relief;

8. Attorney's fees;

9. Expert's fees;

10. All costs of court; and

11. Such other and further relief to which Plaintiff may be justly entitled.


Dated: November 16, 2022

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*
W.D. MASTERSON
State Bar No. 13184000
3141 Hood Street, Suite 500
Dallas, TX  75219
(214) 969-9099 - Telephone
(214) 953-0133 - Fax
wdm@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF
TIEL JENKINS**