**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TIEL JENKINS,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:22-CV-01021-P** |
| | § | |
| **AMEDISYS HOLDING, L.L.C.** | § | |
| **D/B/A ASANA HOSPICE, AN** | § | |
| **AMEDISYS CO.,** | § | |
| | § | |
| **DEFENDANT.** | § | |

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Arthur V. Lambert
ATTORNEY-IN-CHARGE
Texas State Bar No. 11841250
500 N. Akard Street, Suite 3550
Dallas, TX 75201
Tel: (214) 220-9100
Fax: (214) 220-9122
FISHER & PHILLIPS LLP
*alambert@fisherphillips.com*

Jason D Keck (*pro hac vice*)
Scott C Fanning (*pro hac vice*)
FISHER & PHILLIPS LLP
10 S. Wacker Dr., Ste. 3450
Chicago, IL 60606
Tel: (312) 346-8061
Fax: (312) 346-3179
*jkeck@fisherphillips.com*
*sfanning@fisherphillips.com*

**ATTORNEYS FOR DEFENDANT**

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Contents .................................................................................................. i

Table of Authorities.............................................................................................. ii

I.      Introduction and Summary of the Argument ................................................. 1

II.     Statement of Undisputed Facts ..................................................................... 2

      A.      Plaintiff's Employment With Amedisys .............................................. 2

      B.      Amedisys' Relevant Policies and Rules................................................ 2

      C.      Plaintiff's Request For An Accommodation .......................................... 4

      D.      Plaintiff's Falsification of Government Forms And Termination of Employment. 7

      E.      Plaintiff's EEOC Charge ..................................................................... 12

III.    Legal Argument and Authorities .................................................................. 13

      A.      Standard Of Review ............................................................................. 13

      B.      This Court Should Grant Summary Judgment As To Plaintiff's Failure To Accommodate Claim. 14

      C.      Plaintiff's Disability Discrimination And Retaliation Claims Involving A Hostile Work Environment And Termination Must Be Dismissed Because Plaintiff Failed To Exhaust Her Administrative Remedies. ........................................................... 18

      D.      Alternatively, Amedisys Is Entitled to Summary Judgment On Plaintiff's Non-Exhausted Discrimination And Retaliation Claims. ............................................. 21

            1.      There Are No Genuine Issues Of Fact Precluding Summary Judgment on Plaintiff's Discriminatory Termination Claim. ....................................... 21

            2.      There Are No Genuine Issues Of Fact As To Plaintiff's Hostile Work Environment Claim. ............................................................................ 25

            3.      There Is No Genuine Issue Of Fact As To Plaintiff's Retaliation Claim. . 27

IV.     Conclusion and Prayer ................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ameen v. Merck & Co.*, 226 Fed. Appx. 363 (5th Cir. 2007) ................................................... 27, 29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................. 14

*Arensdorf v. Geithner*, 329 Fed. Appx. 514 (5th Cir. 2009) ..................................................... 28

*Arismendiz v. Univ. of Tex. at El Paso*, 536 F.Supp.2d 710 (W.D. Tex. 2008) ........................ 28

*Bailey v. Dallas Cnty. Sch.*, 2016 WL 7638146 (N.D. Tex. Dec. 9, 2016) ................................. 18

*Brown v. Coulston*, 463 F. Supp. 3d 662 (E.D. Tex. 2020) ...................................................... 25

*Capozzelli v. Allstate Insurance Co.*, No. 2:13-CV-00260-JRG, 2014 WL 786426 (E.D. Tex. Feb. 25, 2014) ................................................................................................................................ 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................... 13, 14

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164 (5th Cir.1999) ...................... 25

*Clemmer v. Irving Indep. Sch. Dist.*, 2016 WL 1161784 (N.D. Tex. Mar. 22, 2016) ................. 19

*Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862 (5th Cir. 1983) ...................................... 19

*Davis v. Farmers Ins. Exch.*, 372 Fed. Appx. 517 (5th Cir. 2010) ........................................... 23

*Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277 (5th Cir. 1999) ............. 24

*Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476 (5th Cir. 2016) ....................... 17, 18, 24

*Dillard v. City of Austin, Tx.*, No. A-14-CV-0007-ML, 2015 WL 4479055 (W.D. Tex. July 22, 2015) ......................................................................................................................................... 24

*Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703 (5th Cir. 2013) ....... 14

*Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (1995) .............................................................. 16

*Ellis v. Educ. Comm.*, No. CIV.A. H-14-2126, 2015 WL 3866728 (S.D. Tex. June 23, 2015) .... 20

*Feist v. Louisiana*, 730 F.3d 450 (5th Cir. 2013) .................................................................... 15

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229 (5th Cir. 2001) .................................. 26

*Griffin v. United Parcel Service*, 661 F.3d 216 (5th Cir. 2011) ........................................... 16, 18

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) ............................................ 28

*Jackson v. Watkins*, 619 F.3d 463 (5th Cir. 2010) .................................................................. 22

*Jones v. Cont'l Airlines, Inc.*, No. CIV.A. H-04-2246, 2005 WL 2233619 (S.D. Tex. Sept. 14, 2005) ......................................................................................................................................... 29

*Lawson v. Parker Hannifin Corp.*, 614 Fed. Appx. 725 (5th Cir. 2015) ................................... 27

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1995) ........................................................ 14

*Little v. Republic Ref. Co.*, 924 F.2d 93 (5th Cir. 1991) ..................................................... 23, 24

*Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733 (N.D. Tex. Jan. 5, 2015) ....................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................. 14

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 ..................................................................... 24

*McClain v. Lufkin Industries, Inc*, 519 F.3d 264 (5th Cir. 2008). ............................................ 19

*McCray v. DPC Indus., Inc*, 942 F. Supp. 288 (E.D. Tex. 1996) .............................................. 19

*Messick v. Sears, Roebuck & Co.*, 89 F.Supp.2d 848 (W.D. Tex. 2000) ................................... 28

*Muthukumar v. Univ. of Texas at Dallas*, 471 F. App'x 407 (5th Cir. 2012) ............................ 18

*Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242 (5th Cir. 2013) .............................................. 15

*Norfleet v. EverBank,* No. 3:11-CV-3041-B, 2012 WL 400361 (N.D. Tex. Feb. 8, 2012) ........... 19

*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006) .................................................................. 19

*Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318 (5th Cir. 2002) ......................................... 23

*Pineda v. United Parcel Serv.*, 360 F.3d 483 (5th Cir. 2004) ........................................................ 27
*Porter v. Mesquite Indep. Sch. Dist.*, No. 3:96-CV-3311-BF, 1998 WL 329361 (N.D. Tex. June 11, 1998) ................................................................................................................................... 15
*Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487 (Tex. App.—Amarillo 2009, pet. denied) ............... 27
*Puleo v. Texana MHMR, Ctr.*, 187 F.Supp.3d 769 (S.D. Tex. 2016) .......................................... 28
*Rayha v. United Parcel Serv., Inc.*, 940 F.Supp. 1066 (S.D. Tex. 1996) ...................................... 18
*Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759 (5th Cir. 2016) ........................................................ 22
*Rutland-Simpson v. Eli Lilly & Co.*, 940 F.Supp.2d 504 (S.D. Tex. 2013) ................................. 29
*Seppy v. City of Irving, Texas*, No. CIV.A.3:00-CV-386-R, 2002 WL 1592609 (N.D. Tex. July 18, 2002) ................................................................................................................................... 19
*Squyres v. Heico Cos., LLC*, 782 F.3d 224 (5th Cir. 2015) .................................................... 21, 22
*Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007) ................................ 28, 29
*Taylor v. Books A Million*, 296 F.3d 376 (5th Cir. 2002) ........................................................... 18
*Taylor v. Principal Fin. Group*, 93 F.3d 155 (5th Cir. 1996) .................................................... 15
*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) .................................................. 22
*Thompson v. Microsoft Corp.*, 2 F.4th 460 (5th Cir. 2021) ....................................................... 26
*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013) ............................................ 27, 28
*Walker v. Hitchcock Indep. Sch. Dist.*, 508 Fed. Appx. 314 (5th Cir. 2013) ............................. 27
*Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735 (Tex. 2003) ......................................... 24, 25
*Walton v. Bisco Indus., Inc.*, 119 F.3d 368 (5th Cir. 1997) ...................................................... 24
*Walton-Lentz v. Innophos*, 476 F. App'x 566  (5th Cir. 2012) .................................................. 21
*Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121 (5th Cir. 1988) ...................... 14
*Weems v. Dallas Ind. Sch., Dist.*, 260 F. Supp. 3d 719 (N.D. Tex. 2017) .................................. 17
*White v. Denton County*, 655 Fed. Appx. 1021 (5th Cir. 2016) ................................................ 28
*Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2015 WL 9269416 (N.D. Tex. Dec. 21, 2015) ............................................................................................................................... 18, 19

## STATUTES

42 U.S.C. § 12102(1) ................................................................................................................ 16
42 U.S.C. § 12112(b)(5)(A) ....................................................................................................... 14
42 U.S.C. § 2000e-5(e)(1) .......................................................................................................... 18

## RULES

Fed. R. Civ. P. 56(a) ................................................................................................................. 13

## REGULATIONS

29 C.F.R. § 1630.2(o)(1) ........................................................................................................... 15
42 C.F.R. § 418.24 ...................................................................................................................... 9
42 C.F.R. § 418.24(b)(1) ............................................................................................................. 9
42 CFR § 418.24(b) ................................................................................................................... 23

# I.

## <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

This is an employment discrimination case.  As established in more detail below, this Court should grant summary judgment in favor of Amedisys Holding, LLC ("Amedisys" or "Defendant") on each cause of action alleged by Plaintiff, Tiel Jenkins ("Plaintiff") because she lacks evidence establishing entitlement to her requested accommodation under the Americans with Disabilities Act ("ADA") or that Amedisys failed to reasonably engage in the interactive process. To the contrary, the undisputed evidence establishes that Plaintiff's medical provider informed Amedisys—in writing—that Plaintiff: (1) did not possess an impairment that substantially limited any major life activity; and (2) that her purported medical condition did not interfere with her ability to perform the essential functions of her position.

Plaintiff's remaining claims for disability discrimination based on the termination of her employment, hostile work environment, and retaliation under the ADA are barred as a matter of law due to Plaintiff's failure to exhaust her administrative remedies. Furthermore, it is undisputed—in fact, admitted—that Plaintiff violated Amedisys' rules and Medicare's regulations in backdating and backfilling a mandatory federal Election of Benefits form. Plaintiff does not dispute that what she did was wrong or in violation of Amedisys' policies and offers no evidence suggesting that Amedisys terminated her employment for any other reason.  Thus, because there is no genuine issue of material fact on any essential element of Plaintiff's causes of action, this Court should grant Amedisys' Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

## II.

## STATEMENT OF UNDISPUTED FACTS

**A.      Plaintiff's Employment With Amedisys**

Amedisys provides, among other things, home hospice care to patients on Medicare and Medicaid. (Ex. A, Jenkins Dep., App. 31:1-5, 102:16-22). On January 1, 2020, Amedisys hired Plaintiff on at at-will basis in connection with Amedisys' acquisition of Plaintiff's then employer. (Ex. A, Jenkins Dep., App. 14:10-13, 15:13-16, 43:6-16).  Amedisys initially employed Plaintiff as a Volunteer Coordinator. (Ex. A, Ex. A, Jenkins Dep., App. 28:16-19). On September 12, 2020, however, Amedisys promoted Plaintiff to the position of Business Office Manager. (Ex. A, Jenkins Dep., App. 9:2-4).  The Business Office Manager is responsible for, *inter alia*, payroll, ordering supplies, and billing. (Ex. A, Jenkins Dep., App. 33:1-7; Ex. A-2, App. 162).

As Business Officer Manger, Plaintiff worked at Amedisys' Forth Worth Care Center (the "Care Center"). (Ex. A, Jenkins Dep., App. 29:8-13). The Care Center is an administrative office where no hands-on patient care is performed. (Ex. A, Jenkins Dep., App. 29:8-13).  As Business Office Manager, Plaintiff reported to the Director of Operations, who was the highest-ranking Amedisys employee at the Care Center on a day-to-day basis. (Ex. A, Jenkins Dep., App. 31:14-19).  In addition to the Business Office Manager and Director of Operations, a Clinical Manager also worked out of the Care Center whereas clinicians saw patients in the comfort of their residences. (Ex. A, Jenkins Dep., App. 29:10-20).

**B.      Amedisys' Relevant Policies and Rules**

Amedisys prohibits, among other things, unlawful disability discrimination, harassment, and retaliation.  (Ex. A, Jenkins Dep., App. 45:13-46:1, Dep. Ex. A-1, Policy Manual, §§ 1.5 and 1.6, App. 165-66).  To effectuate its prohibition on discrimination, harassment, and retaliation, Amedisys provided its employees—including Plaintiff—with various avenues and mechanisms by

which to make a report of discrimination or harassment.  (Ex. A, Jenkins Dep., App. 45:13-46:1, Ex. A-1, Policy Manual, §§ 1.5 and 1.6, App. 165-66). Additionally, Amedisys specifically maintains a "Requests for Disability or Religious Accommodation" policy that states:

> Qualified individuals with disabilities who may need an accommodation of their disability to perform the essential functions of their job may make a request for the same to their manager/supervisor or to an Employee Relations Consultant in the Human Resources Department. Upon receipt of such a request, the manager/supervisor and the Employee Relations Consultant will meet with the requesting individual to discuss and identify the precise limitations resulting from the disability, its negative impact upon or conflict with the individual's essential job functions, and the potential accommodation(s), if any that could alleviate those problems.

> The Company will determine the feasibility, or reasonableness, of any potential accommodations considering various factors, including, but not limited to, the nature and cost of the accommodation, the facility's overall financial resources and organization, the impact of the accommodation on the requesting employee, and its impact on the operation of the Company and/ or the facility where the employee works, including its impact on the work demands and burdens of other employees and on the Company's and/or the facility's ability to conduct business.

> Employees are expected to fully cooperate in the accommodation process. The duty to cooperate includes making complete and sincere efforts to provide management, with current medical information as needed for the Company to ascertain its obligations and the employee's rights. Employees who do not meaningfully or timely cooperate in the accommodation process, will lose the potential for an accommodation, due to their failure to engage in the good faith interactive process. Following the conclusion of the good faith, interactive process, the Company will communicate whether an accommodation of the employee's disability can be reasonably provided without posing an undue hardship. If so, it will be implemented as soon as practical. If not, the Company will communicate with the employee about their options and their continued employment with Amedisys going forward.
>
> ***
>
> An employee or job applicant who has questions regarding this policy, or who would like to make an accommodation request, or who believes that there has been discrimination or denial of a reasonable accommodation in violation of this policy should notify an Employee Relations Consultant by calling the .Amedisys Help Desk toll-free phone number: 888-777-4312, option 1 for Human Resources Employees can also contact the Compliance Line anonymously at 800-464-0020. All such inquiries or complaints will be treated as confidential to the extent practicable. No employee will be retaliated against for their good faith participation under this policy, or for seeking an accommodation hereunder, specifically

addressing employee request for maintains an in the terms and conditions of their employment. Violation of Amedisys anti-retaliation policy will result in disciplinary action, up to and including termination of employment.

(Ex. A, Jenkins Dep., App. 43:17-44:4, Ex. A-1, Policy Manual, § 1.7, App. 166).

In addition to its EEO and state-of-the-art disability accommodation policy, Amedisys also maintains a comprehensive disciplinary policy. (Ex. A, Jenkins Dep., App. 59:3-15; Ex. A-1, Policy Manual, §§ 1.13, 1.15, App. 168). Amedisys' "Rules of Conduct" policy makes clear that any failure by any employee to follow Amedisys' written policies and procedures could result in "corrective disciplinary action, including in some instances immediate separation of employment." (Ex. A, Jenkins Dep., App. 59:3-15; Ex. A-1, Policy Manual, § 1.13(16), App. 168). Plaintiff received these policies and was familiar with them during her employment with Amedisys. (Ex. A, Jenkins Dep., App. 40:21-24, 41:10-17, 43:17-44:4, 44:2-9, 45:13-46:1).

### C.   Plaintiff's Request For An Accommodation

As a result of the COVID-19 pandemic, the Care Center's office staff had utilized a rotating work from home schedule. (Ex. A, Jenkins Dep., App. 54:7-13, 151:16-17); [ECF No. 1, ¶ 4.05]. On November 18, 2020, however, Amedisys' regional leadership mandated that all office employees at the Care Center, including Plaintiff, be in the office full-time—a requirement consistent among the other Care Centers in the region. (Ex. A, Jenkins Dep., App. 47:9-21; 48:22-25, 64:14-21). At that point, the entire Care Center staff returned in person to the Care Center on a full time basis. (Ex. A, Jenkins Dep., App. 56:3-9).

Thereafter, in late November 2020, Plaintiff first reached out to Amedisys' Human Resources Department to request a work from home accommodation. (Ex. A, Jenkins Dep., App. 47:13-25). Plaintiff had never requested to work from home as an accommodation for part of her employment with Amedisys, or any prior employers, before this time. (Ex. A, Jenkins Dep., App.

22:12-15, 65:11-15, 69:4-8, 156:2-11). As part of her new endeavor to work from home, Plaintiff contacted Senior Employee Relations Consultant, Kellie Brady ("Brady"), wherein Plaintiff made a verbal request to be allowed to work from home during the afternoon as an accommodation for her alleged Multiple Sclerosis ("MS"). (Ex. A, Jenkins Dep., App. 77:16-20). At the time Plaintiff informed Brady of her medical condition, none of Plaintiff's then supervisors had knowledge of any purported medical condition or her putative need for an accommodation.  (Ex. A, Jenkins Dep., App. 64:22-65:15; Ex. A-3, App. 179; Ex. B, RTA No. 17, App. 195).  Plaintiff claims to have MS. (Ex. A, Jenkins Dep., App. 65:17-20). Plaintiff testified that she requested this accommodation because her alleged MS symptoms became worse in the afternoon and working from home would allow her to work in different positions (e.g. while laying down) due to back spasms and it would allow Plaintiff to use her own private bathroom due to bowel control issues.  (Ex. A, Jenkins Dep., App. 78:20-79:4. 83:12-19).

On December 3, 2020, just a few days after receiving Plaintiff's request (and some additional back-and-forth) Brady provided Plaintiff with two forms to be completed and returned to Amedisys – one by Plaintiff and the other by Plaintiff's healthcare provider. (Ex. A, Jenkins Dep., App. 71:22-72:12, Ex. A-4, App. 184-87; Ex. C, Brady Decl., ¶¶ 3-4, App. 208-9). The form to be completed by Plaintiff's healthcare provider, known as an ADA Accommodation Form, assisted Amedisys in evaluating Plaintiff's request and sought information about the nature of Plaintiff's purported restrictions, the extent of Plaintiff's purported limitations, and any possible accommodations enabling Plaintiff to perform the essential functions of her position.  (Ex. A-4 – App. 184-87; Brady Decl., ¶¶ 3-4, App. 208-9)

Plaintiff returned the completed forms, including the ADA Accommodation Form, to Amedisys on December 17, 2020. (Ex. A, Jenkins Dep., App. 72:21-23). Prior to returning the

forms, Plaintiff reviewed the ADA Accommodation Form completed by her healthcare provider and had no questions or concerns regarding the information provided therein. (Ex. A, Jenkins Dep., App. 93:18-94:1).  Critical to this case, the ADA Accommodation Form completed by Plaintiff's medical provider indicated that while Plaintiff had MS, her medical condition did <u>not</u> substantially limit any of Plaintiff's major life activities:

| | | |
|---|---|---|
| **Substantial limitations.** Does the impairment substantially limit a major life activity? (*A major life activity is substantially limited when compared to most people in the general population and when it is permanent or long-term.*) | Yes ☐ | No ☑ |

(Ex. B, RTA No. 11, App. 194, Ex. B-3, RTA Ex. C, App. 205). Additionally, Plaintiff's medical provider likewise indicated that Plaintiff's condition did not impact her ability to perform her job functions:

| | | |
|---|---|---|
| Are any of the employee's job functions impeded by the impairment noted above? | ☐ Yes | ☑ No |

(Ex. B, RTA No., 12– App. 194, Ex. B-3, RTA Ex. C– App. 206).   Rather, the ADA Accommodation Form completed by Plaintiff's medical provider merely suggested that Amedisys permit Plaintiff to take leave if she felt sick.  (Ex. A, Jenkins Dep., App.95:9-14; Ex. B-3, RTA Ex. C, App. 206). Moreover, while the form completed by Plaintiff herself referenced her back spasms and bowel control issues, there was no reference whatsoever in the completed ADA Accommodation Form indicating that Plaintiff's bowel issues or back spasms interfered with her ability to work.  (Ex. B-3, RTA Ex. C, App. 204-8).

On December 31, 2020, Amedisys denied Plaintiff's request to work from home every day in the afternoon because Plaintiff's medical provider made clear that Plaintiff neither possessed an impairment that substantially limited her in any major life activity, nor that her alleged condition

impeded her in any way from performing her job functions. (Ex. A, Jenkins Dep., App. 95:17-20, Ex. A-5, App. 188; Ex. C, Brady Decl., ¶ 6, App. 210).  In the email Amedisys sent to Plaintiff notifying her of its decision to deny her request to work from home, Amedisys indicated that based upon the medical documentation provided, Plaintiff had not established that she was a qualified individual with a disability eligible for an accommodation, but nonetheless offered Plaintiff the opportunity to request a medical/disability leave if needed and explained how she could do so.[1] (Ex. A, Jenkins Dep., App. 99:17-25, Ex. A-5 – App. 188; Ex. C, Brady Decl., ¶ 7, App. 210). Amedisys' offer was consistent with Plaintiff medical provider's recommendation to allow Plaintiff to take leave if she felt sick. (Ex. A, Jenkins Dep., App. 95:9-14, 100:23-101:1; Ex. B-3, RTA Ex. C – App. 206).

Prior to the termination of her employment with Amedisys (more on that below), Plaintiff never followed up with anyone at Amedisys regarding the denial of her request to work from home. (Ex. A, Jenkins Dep., App.100:4-8). Additionally, after initiating her request to work from home, Plaintiff testified that nothing else was done to her in terms of harassment or other negative treatment prior to her paid suspension starting on January 11, 2020, which immediately preceded the termination of her employment. (Ex. A, Jenkins Dep., App.73:21-74:25, 75:5-9, 119:11-17, 127:18-23).

**D.** **Plaintiff's Falsification of Government Forms And Termination of Employment.**

As Business Office Manager, Plaintiff oversaw the administrative aspects of Care Center billing.  (Ex. A, Jenkins Dep., App. 33:11-13).  For example, as Plaintiff's signed job description for the Business Office Manager position makes clear, she was responsible for reviewing medical

---

[1] Amedisys' leaves are administered by a third-party leaves administrator.

records, data entry, and reviewing patient charts for compliance. (Ex. A, Jenkins Dep., App. 33:14-34:12, 34:19-35:21, 35:22-36:3).

Amedisys is committed to providing end-of-life and palliative care services to persons who have terminal diagnoses in strict conformity with Medicare and Medicaid regulations. (Ex. D, Kinard Decl., ¶ 2, App. 213). As a hospice provider, Amedisys is reimbursed for its services through Medicare and Medicaid. (Ex. A, Jenkins Dep., App. 102:16-22). Thus, as a condition of participating in Medicare and Medicaid, Amedisys must comply with the program's rules. (Ex. A, Jenkins Dep., App. 102:23-103:2). To that end, Amedisys requires all employees and other persons who provide patient care services, billing, or coding functions to adhere to all Federal health care program requirements, applicable laws, and with Amedisys' own policies and procedures, including Amedisys' Corporate Compliance Plan. (Ex. D, Kinard Decl., ¶ 2, App. 213).

By way of background, whenever a patient is beginning hospice care, they must review and sign an Election of Benefits ("EOB") form (Ex. A, Jenkins Dep., App. 103:3-14). Completion of the EOB is a federal requirement and is required for Amedisys to bill the government for hospice services. (Ex. A, Jenkins Dep., App. 103:15-22). Plaintiff understood that the EOB is a legal document and that Amedisys' failure to comply with the EOB requirements could render Amedisys ineligible to provide and receive reimbursement for certain hospice services. (Ex. A, Jenkins Dep., App. 103:23-25, 104:7-14).

One of the purposes of the EOB is to ensure that the patient—or his or her authorized representative—is able to select his or her physician as part of the hospice election process.  In its simplest form, one of the functions of the EOB is to prevent a healthcare provider in such a situation from imposing health care on the patient and requiring that they use a specific provider. (Ex. A, Jenkins Dep., App. 106:1-7). In other words, the EOB memorializes the patient's voluntary

healthcare provider selection. (Ex. A, Jenkins Dep., App. 105:17-21). Jenkins knew that patients were required to sign the EOB. (Ex. A, Jenkins Dep., App. 105:7-12). Indeed, 42 C.F.R. § 418.24 contains the federal regulatory requirements associated with the completion of the EOB and specifically states that the EOB must include the "[i]dentification of the particular hospice and of the attending physician that will provide care to the individual" and requires that "[t]he individual or representative must acknowledge that the identified attending physician was his or her choice." 42 C.F.R. § 418.24(b)(1). Moreover, to change the attending physician, the regulations require that "the individual (or representative) must file a signed statement with the hospice that states that he or she is changing his or her attending physician." 42 C.F.R. § 418.24.

Prior to the termination of her employment, and as recently as October 1, 2020, Plaintiff completed Amedisys' Corporate Compliance and EOB training. (Ex. A, Jenkins Dep., App. 57:18-21, 22-24, 106:15-19; Ex. D, Kinard Decl., ¶¶ 4, 9, App. 214). During that training, Amedisys provided Plaintiff with its Corporate Compliance Plan, which states that "[n]o record or any entry therein will be falsified, back-dated, defaced, intentionally destroyed, or otherwise altered or tampered with in order to gain a real or perceived advantage for the Company." (Ex. D, Kinard Decl., ¶ 6, App. 214). Specifically, with respect to the EOB, Amedisys' Policy AA-004, Election of Hospice Benefits, which was provided and reviewed during the training, requires that the signed EOB include "identification of the patient's attending Physician and acknowledgement that the attending physician was chosen by the patient." (Ex. D, Kinard Decl., ¶ 10, App. 215). If the patient signs the EOB and the attending physician's name is not listed on the statement, the patient did not satisfy Medicare's requirements for making a valid election of hospice benefits because there is no acknowledgement that the attending physician was voluntarily chosen by the patient. (Ex. D, Kinard Decl., ¶¶ 11-12, App. 215).

Despite these mandates and requirements, Plaintiff would go on to modify a signed EOB, leading to the termination of her employment. On January 4, 2021, Plaintiff received an email from Tina Kolb ("Kolb"), who worked in Amedisys' Revenue Recovery Business Operations.  That January 4, 2021, email informed Plaintiff (and others) that Amedisys had placed a manual bill hold for a patient with the initials "W.C." because Amedisys had not received the EOB for the patient. (Ex. A, Jenkins Dep., App. 108:6-18). A manual bill hold means that Amedisys was not able to bill for the services until the hold was released. (Ex. A, Jenkins Dep., App. 109:11-17). The following day, on January 5, 2021, Plaintiff uploaded the EOB for "W.C." (Ex. A, Jenkins Dep., App. 108:21-109:3). After receiving the EOB, Kolb informed Plaintiff that the manual bill hold would remain on "W.C." because the EOB was incomplete. (Ex. A, Jenkins Dep., App.109:4-10). Specifically, Kolb informed Plaintiff that the attending physician information on the form was missing and the start of care date was blank.  (Ex. A, Jenkins Dep., App. 109:18-22).

Less than an hour after Kolb informed Plaintiff of the EOB omissions, Plaintiff uploaded another version of "W.C.'s" EOB while stating, "error corrected, forms uploaded." (Ex. A, Jenkins Dep., App.109:24-110:6). According to Plaintiff, she had located the "attending physician's" name, added it to the EOB by writing it in, and added the start of care date.  (Ex. A, Jenkins Dep., App. 110:15-18, 111:23-112:7; 116:25-117:13; Ex. A-6, App. 190; Ex. B, RTA No. 13– App. 194). When Plaintiff altered the EOB on January 5, 2021, Plaintiff wrote the start of care date as December 31, 2020. (Ex. A, Jenkins Dep., App. 117:17-22; Ex. A-6, App. 190). While Plaintiff initialed her changes, she did not date her changes or include any indication that the information was added after the patient signed the EOB. (Ex. A-6, App. 190).

Plaintiff knew what she did was wrong.  In fact, on January 5, 2021, Plaintiff sent an email to the Regional Director of Clinical Operations, Crystal Nering, admitting that she "***made a huge***

*mistake.*" (Ex. A, Jenkins Dep., App. 111:1-15) (emphasis added). Plaintiff explained that the "huge mistake" was writing the attending physician's name and start of care date on the EOB after it had been signed by the patient. (Ex. A, Jenkins Dep., App. 112:9-10). Plaintiff again admitted on January 8, 2021 that she made a mistake and did not follow the proper plan of action. (Ex. A, Jenkins Dep., App. 115:8-15).

While Plaintiff has conveniently since claimed ignorance of the EOB rules and requirements, Amedisys provided Plaintiff training on the exact mistake she admitted making here. In fact, Plaintiff completed Amedisys' Patient Rights and Responsibilities for hospice training on March 15, 2020, and Amedisys' Compliance Basics training on March 17, 2020. (Ex. A, Jenkins Dep., App. 57:18-21, 22-24; Ex. D, Kinard Decl., ¶¶ 4, 9, App. 214). Plaintiff also completed EOB training on October 1, 2020. (Ex. A, Jenkins Dep., App. 57:25-58:5, 106:15-19). As established above, these trainings made clear that Plaintiff had no right to alter an EOB and no purview to subsume the rights and responsibilities reserved solely for the patient (i.e., to select his or her medical provider and to confirm that the selection was the patient's alone). Yet, despite these training sessions and the various resources available to her, Plaintiff did not consult any written policies, procedures, or prior trainings before unilaterally updating the EOB for W.C. (Ex. A, Jenkins Dep., App. 115:18-24, 116:2-6). Similarly, Plaintiff did not ask anyone for help before unilaterally and inappropriately altering the EOB. (Ex. A, Jenkins Dep., App.115:25-116:6, Ex. B, RTA No. 14– App. 194).

On January 11, 2021 and in light of Plaintiff's admitted conduct and the serious compliance issues it raised, Amedisys placed Plaintiff on a paid leave of absence pending an investigation. (Ex. A, Jenkins Dep., App. 114:17-20, 125:16-18, 125:25-126:14; Ex. C, Brady Decl., ¶¶ 8-9, App. 210). Over the next several days, Amedisys' investigation revealed that Plaintiff unilaterally and

inappropriately added a physician's name to an already signed EOB and backdated the date for the start of care. (Ex. C, Brady Decl., ¶10, App. 210).  Amedisys also reviewed Plaintiff's admission that she had made a "huge mistake." *Id.* Plaintiff, for her part, admits that her "huge mistake" could have interfered with Amedisys' ability to participate in the Medicare and Medicaid programs. (Ex. A, Jenkins Dep., App. 102:23-103:2).

On or about January 28, 2021, after due consideration and consultation, Amedisys' SS Hospice Area Vice President of Operations, Gary Walker ("Walker"), decided to terminate Plaintiff's employment for failing to follow Amedisys' written policies and procedures. (Ex. A, Jenkins Dep., App. 130:9-131:2; Ex. B, Brady Decl., ¶¶ 11-12, App. 211). Amedisys memorialized its decision in a Separation Form provided to Plaintiff, which stated that Amedisys was terminating Plaintiff's employment for failing to follow Amedisys' written policies and procedures by backdating the EOB and adding the physician information *after* the patient had signed the EOB. (Ex. A, Jenkins Dep., App. 132:21-133:16, Ex. A-7, App. 191). Notably, there is no record evidence that Walker knew of Plaintiff's alleged medical condition. To be sure, neither Plaintiff, nor Brady informed Walker of Plaintiff's alleged disability. (Ex. A, Jenkins Dep., App. 70:1-23; Ex. C, Brady Decl., ¶13-14, App. 211).

### E.    Plaintiff's EEOC Charge

On March 5, 2021, Plaintiff signed and filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge"). (Ex. B, RTA No. 1,  App. 193; Ex. B-1, RTA Ex. A, App. 198). Plaintiff signed and filed her Charge more than thirty (30) days after Amedisys terminated Plaintiff's employment.  (Ex. A, Jenkins Dep., App. 141:10-16).  Despite this, Plaintiff admits that there is no reference or any allegation of wrongdoing with respect to the termination of her employment contained anywhere in her EEOC Charge. (Ex. A, Jenkins Dep.,

App. 141:2-5, Ex. B-1, RTA Ex. A, App. 198). Nor did Plaintiff reference or allege any form of harassment or hostile work environment in her EEOC Charge. (Ex. B-1, RTA Ex. A, App. 198). Plaintiff also admits that she did not check the box for retaliation. (Ex. B-1, RTA Ex. A, App. 198). In fact, in the section of Plaintiff's EEOC Charge titled "The Particulars Are," Plaintiff's sole claim before the EEOC stemmed only from Amedisys' alleged failure to accommodate Plaintiff's request to work from home. (Ex. B-1, RTA Ex. A, App. 198).

Plaintiff never filed any amendments to her Charge of Discrimination with the EEOC and/or Texas Workforce Commission. (Ex. B, RTA No. 2, App. 193). Nor did Plaintiff file any other charges of discrimination with the EEOC or the Texas Workforce Commission. (Ex. B, RTA No. 3, App. 193). As a result, the EEOC's Determination after its investigation into Plaintiff's EEOC Charge did not address or reference the termination of Plaintiff's employment or any claim of harassment or retaliation. Rather, the sole subject of the EEOC's findings related to Plaintiff's allegation that Amedisys allegedly failed to accommodate Plaintiff's request to work from home. (Ex. B, RTA No. 4, App. 193, Ex. B-2, RTA Ex. B– App. 201-03).

## III.

## <u>LEGAL ARGUMENT AND AUTHORITIES</u>

### A.    Standard Of Review

Summary judgment is appropriate where there is no genuine issue of material fact. Fed. R. Civ. P. 56(a). Rule 56(c) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). A defendant is not required to put forth evidence that negates a plaintiff's claim or shows the absence of a genuine issue of material fact—a defendant must merely point out that there is an absence of evidence supporting

a material aspect of the plaintiff's case. *Id.* at 317-18. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis original).

After the moving party demonstrates that there are no genuine issues of material fact for determination, the nonmoving party must come forward with specific facts that establish there are indeed genuine issues of material fact that must be determined by the jury. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). A plaintiff must present specific facts which establish that genuine issues remain for trial notwithstanding the movant's showing to the contrary. *Celotex Corp.*, 477 U.S. 317, 324 (1986). This requires the nonmovant to demonstrate something beyond "metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is mandatory when the nonmovant fails to satisfy this summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1995) (en banc) (per curiam). Failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *See Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

**B.     This Court Should Grant Summary Judgment As To Plaintiff's Failure To Accommodate Claim.**

An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability… unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA's implementing regulations define reasonable accommodations as, *inter alia*: "Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and

privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1). To prevail on a failure to accommodate claim, Plaintiff must show that: "(1) she is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by Amedisys; and (3) Amedisys failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013); *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013).

"[T]he burden of obtaining a reasonable accommodation falls heavily upon the employee seeking the accommodation." *Porter v. Mesquite Indep. Sch. Dist.*, No. 3:96-CV-3311-BF, 1998 WL 329361, at *8 (N.D. Tex. June 11, 1998). "[I]t is the employee's initial request for an accommodation [that] triggers the employer's obligation to participate in the interactive process of determining one. If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir. 1996). "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Id.* at 165-66. The Fifth Circuit has recognized that "the employee and his health-care provider are best positioned to know what type of accommodation is appropriate for the employee." *Id.*

Here, upon learning of Plaintiff's request for an accommodation, Amedisys initiated a dialogue with Plaintiff and requested Plaintiff's medical provider provide information so Amedisys could assess her request. Specifically, Amedisys requested that Plaintiff's medical provider: (1) confirm Plaintiff's medical condition; (2) identify Plaintiff's substantial limitations (if any); (3)

explain how, if at all, Plaintiff is limited in performing her job duties; and (4) provide suggestions for possible reasonable accommodations. (Ex. C, Brady Decl., ¶¶ 3-6, App. 209-210).  Amedisys' request is entirely appropriate.  *See Griffin v. United Parcel Service*, 661 F.3d 216, 224 (5th Cir. 2011) ("This court has recognized that 'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" ).

In response to Amedisys' inquiry, it is undisputed that on December 15, 2020, Plaintiff's medical provider informed Amedisys—in writing—on the ADA Accommodation Form that Plaintiff did <u>not</u> possess an impairment that substantially limited any of her major life activities.[2] (Ex. B, RTA Nos. 11, App. 194, Ex. B-3, RTA Ex. C, App. 205).  As a result, and, at least according to Plaintiff's medical provider, Plaintiff was not a "qualified individual" with a disability entitled to a reasonable accommodation under the ADA.  (Ex. C, Brady Decl., ¶ 6, App. 210); *Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733, at *5 (N.D. Tex. Jan. 5, 2015) ("Therefore, in order to adequately allege a disability under the ADA, a plaintiff must plead facts giving rise to an inference that his or her impairment 'substantially limits one or more major life activities.'"); *See also* 42 U.S.C. § 12102(1).

It is that simple. Because Plaintiff's physician made clear that Plaintiff's medical condition did not "substantially limit" any major life activity, Plaintiff was not and is not a "qualified individual" under the law and Amedisys had no obligation under the ADA to provide her with any accommodation, let alone the requested accommodations.  *See, e.g., Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (1995) (granting summary judgment in employer's favor holding that

---

[2] While Plaintiff's medical provider confirmed she had MS, she also confirmed that the condition presumably had not manifested itself in a way that substantially limited any of Plaintiff's major life activities.

failure to be "substantially limited" in one or more major life activities is fatal to an ADA claim); *Weems v. Dallas Ind. Sch., Dist.*, 260 F. Supp. 3d 719, 729 (N.D. Tex. 2017) (even post-ADA 2008 amendments, failure to be substantially limited in an major life activities renders an individual not "disabled" for purposes of the ADA).   For this independent reason alone, Plaintiff's failure to accommodate claim is legally incognizable and warrants entry of summary judgment in Amedisys' favor.

Furthermore, Plaintiff's medical provider unequivocally stated that Plaintiff's alleged medical condition did not prevent her from performing any of her job functions. (Ex. B, RTA No. 12, App. 194, Ex. B-3, RTA Ex. C, App. 206). Again, as a result of Plaintiff's medical provider's statements and representations, Amedisys reasonably concluded that even if Plaintiff had a disability, no accommodations were required because Plaintiff could perform the essential functions of her position without any such accommodations. (Ex. C, Brady Decl., ¶ 6, App. 210).

Additionally, despite denying Plaintiff's request to work remotely every single afternoon, Amedisys continued the interactive process and offered Plaintiff the opportunity to request a medical/disability leave of absence should she wish to pursue that option. (Ex. A, Jenkins Dep., App. 99:17-25). Amedisys' actions and counter proposal were entirely consistent with Plaintiff's medical provider's suggestion that Plaintiff take leave if she was feeling ill. (Ex. A, Jenkins Dep., App. 95:9-14). Leave or time off may be considered a reasonable accommodation under the ADA. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) ("Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave.").   Further, "the ADA grants employer's broad discretion in choosing between effective accommodations, ultimately allowing each employer wide latitude in selecting the accommodation that is easiest for it to provide." *Rayha v. United Parcel Serv.,*

*Inc.*, 940 F.Supp. 1066, 1070 (S.D. Tex. 1996) (internal citation omitted); *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (holding employer is not required to provide employee with the employee's preferred accommodation). Therefore, Amedisys was entitled under the law to offer Plaintiff leave as needed as a reasonable alternative to remote work and Plaintiff's admitted failure to respond to Amedisys' proposed alternate accommodation amounts to a failure to engage in the interactive process on Plaintiff's part. In such instances, where the breakdown in the interactive process is "traceable to the employee," then there is no violation on the employer's part. *Delaval*, 824 F.3d at 481 *citing Griffin*, 661 F.3d at 224. Thus, for each of these reasons, this Court should enter judgment in Amedisys favor on Plaintiff's failure to accommodate claim.

**C.**    **Plaintiff's Disability Discrimination And Retaliation Claims Involving A Hostile Work Environment And Termination Must Be Dismissed Because Plaintiff Failed To Exhaust Her Administrative Remedies.**

Exhaustion of administrative remedies is a prerequisite to filing an ADA lawsuit. *Bailey v. Dallas Cnty. Sch.*, 2016 WL 7638146, at *2 (N.D. Tex. Dec. 9, 2016) report and recommendation adopted, 2017 WL 57836 (N.D. Tex. Jan. 4, 2017) (*citing Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996*); Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist*., 2015 WL 9269416, at *4 (N.D. Tex. Dec. 21, 2015). To exhaust administrative remedies on an ADA claim, a plaintiff must timely file a charge of discrimination with the EEOC asserting the claim and receive a Notice of Right to Sue from the EEOC on the claim. *See Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002). An employee has 300 days from the date of the alleged unlawful employment practice to file a charge of employment discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1). And, failure to do so bars the claim. *See Muthukumar v. Univ. of Texas at Dallas*, 471 F. App'x 407, 409 (5th Cir. 2012). Moreover, the scope of a subsequent ADA lawsuit is limited by the scope of the EEOC charge of discrimination and any EEOC investigation that can

reasonably be expected to grow out of the charge of discrimination.  *See Clemmer v. Irving Indep. Sch. Dist.*, 2016 WL 1161784, at *5 (N.D. Tex. Mar. 22, 2016); *Zavala*, 2015 WL 9269416, at *4.

When determining if a claim(s) in a lawsuit exceed the scope of an EEOC proceeding, courts constrain their analysis to the facts in the administrative charge, right-to-sue letter, and subsequent complaint.  *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Plaintiffs fail to exhaust their administrative remedies by either failing to file an administrative charge of discrimination altogether or by asserting claims beyond the scope of the charge and right-to-sue letter.  *Id.* To that end, "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."  *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 274 (5th Cir. 2008). While not jurisdictional, this requirement "is a precondition to filing suit in district court."  *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983).

As an initial matter, Plaintiff's failure to check the retaliation box on her EEOC Charge, reference her termination, or include any allegations of retaliation bar Plaintiff from now pursuing such a claim.  *See also Norfleet v. EverBank,* No. 3:11-CV-3041-B, 2012 WL 400361, at *2 (N.D. Tex. Feb. 8, 2012) (dismissing retaliation claim due to failure to exhaust administrative remedies because plaintiff's charge "left the box for retaliation unchecked" and "contains no facts indicating that she engaged in a protected activity and suffered an adverse employment action as a consequence."); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 294 (E.D. Tex. 1996) (dismissing retaliation claim because plaintiff failed to check retaliation box or allege retaliation on charge); *Seppy v. City of Irving, Texas,* No. CIV.A.3:00-CV-386-R, 2002 WL 1592609, at *4 (N.D. Tex. July 18, 2002) (same).

Plaintiff's EEOC Charge alleged a very specific form of disability discrimination (i.e.,

failure to accommodate), which makes clear that Plaintiff did not exhaust her administrative remedies as to any hostile work environment or termination claims. Plaintiff's EEOC charge contains no reference and makes no mention whatsoever to any form of hostile work environment, harassment, or the termination of her employment, despite the fact that Plaintiff was well aware of her termination by the time she filed the charge. For example, in *Ellis v. Educational Commission*, the court dismissed the plaintiff's ADA failure to accommodate claim for failing to exhaust her administrative remedies despite alleging ADA discrimination in her charge.  No. CIV.A. H-14-2126, 2015 WL 3866728, at *11-12 (S.D. Tex. June 23, 2015).  In ordering dismissal, the court held that the plaintiff's ADA discrimination allegations in her charge related solely to the termination of her employment and did not concern a failure to accommodate.  *Id.* Specifically, the Court opined that "[t]here are no allegations in the charge that [the plaintiff] requested any reasonable accommodation for her disability or perceived disability, no less facts showing that [the defendant] refused any request by her for accommodation. Thus, her charge of discrimination, itself, would not trigger the investigatory and conciliatory procedures of the EEOC regarding any failure to reasonably accommodate any requests made by [the plaintiff] for her disability." *Id.* at *11.

Likewise, in *Capozzelli v. Allstate Insurance Co.,* the Court dismissed the plaintiff's failure to accommodate claim for failing to exhaust administrative remedies even though her administrative charge filed with the EEOC alleged "disability discrimination."  No. 2:13-CV-00260-JRG, 2014 WL 786426, at *3-4 (E.D. Tex. Feb. 25, 2014)). In doing so, the Court held that the plaintiff's failure to accommodate claim was based on a factual allegation that did not appear in the plaintiff's charge, which instead focused on the termination of plaintiff's employment and not any requested accommodation.  *Id.*

In this case, not only are the facts here a mirror image of the facts in *Ellis* and *Capozzelli* (i.e., Plaintiff's EEOC Charge focuses solely on Plaintiff's failure to accommodate allegations without mentioning the termination of her employment, protected activity, or harassment), but also the legal reasoning contained in *Ellis* and *Capozzelli* forecloses Plaintiff's unexhausted claims. As evidenced by the EEOC's Determination in this matter (Ex. B, RTA No. 4, App. 193; Ex. B-2, RTA Ex. B, App. 201-203), Plaintiff's discrete and limited EEOC Charge narrowly implicated and focused only on her accommodation request and it did not trigger any investigatory or conciliatory procedures with respect to the termination of Plaintiff's employment with Amedisys or any alleged hostile work environment.  *See also Walton-Lentz v. Innophos*, 476 F. App'x 566, 569 (5th Cir. 2012) (plaintiff failed to exhaust administrative remedies with respect to hostile work environment claim because she only alleged retaliation in her charge). Put simply, Plaintiff's EEOC Charge failed to properly exhaust any claim for hostile work environment, disability discrimination, or retaliation. Thus, Amedisys is entitled to summary judgment on each of those claims as a matter of law.

**D.    Alternatively, Amedisys Is Entitled to Summary Judgment On Plaintiff's Non-Exhausted Discrimination And Retaliation Claims.**

   ***1.    There Are No Genuine Issues Of Fact Precluding Summary Judgment on Plaintiff's Discriminatory Termination Claim.***

Aside from the fact that Plaintiff failed to exhaust her administrative remedies, Amedisys is further entitled to summary judgment on any claims surrounding Plaintiff's termination of employment because Amedisys had a legitimate, non-discriminatory reason for her terminating her employment, and Plaintiff cannot show pretext.  Where (as here) there is no direct evidence of discrimination, courts analyzing disability termination claims rely on the *McDonnell Douglas* burden-shifting framework.  *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 231 (5th Cir. 2015);

*Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 Fed. Appx. 343, 346 (5th Cir. 2011). "Under *McDonnell Douglas*, [Plaintiff] must prove that: (1) she had a disability, (2) she was qualified for the job, and (3) there was a causal connection between [her termination] and [her] disability." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). "If [Plaintiff] meets this burden, [Amedisys] can rebut the presumption of discrimination by articulating legitimate business reasons for the adverse action." *Rodriguez*, 820 F.3d at 765. "At this stage, [Amedisys'] burden is one of 'production, not persuasion,' and 'involve[s] no credibility assessment.'" *Squyres*, 782 F.3d at 231 (citation omitted). "Finally, if [Amedisys] provides a legitimate reason, [Plaintiff] must offer evidence to show that reason was pretext for discrimination." *Rodriguez*, 820 F.3d at 765. This requires Plaintiff to show that "the legitimate reasons offered by [Amedisys] were not its true reasons but were a pretext for discrimination" based on her disability. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "To carry this burden, [Plaintiff] must rebut each nondiscriminatory . . . reason articulated by [Amedisys]." *Rodriguez*, 820 F.3d at 765; *see also Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (holding plaintiff must rebut employer's non-discriminatory reasons to withstand summary judgment). "The ultimate burden of persuading the trier of fact that [Amedisys] intentionally discriminated against [Plaintiff] remains at all times with [Plaintiff.]" *Burdine*, 450 U.S. at 253.

### a. Amedisys Terminated Plaintiff's Employment For Legitimate, Non-Discriminatory Reasons.

Even assuming Plaintiff could meet the other elements of her *prima facie* case of disability discrimination, there is no dispute that Amedisys terminated Plaintiff's employment because she backdated the EOB and added critical information to the EOB in violation of Amedisys' written policies and the law. (Ex. A, Jenkins Dep., App. 110:15-18, 111:23-112:7; 116:25-117:13; A-6, App. 190; Ex. B, RTA No. 13, App. 194; Ex. A-7, App. 191; Ex. C, Brady Decl., ¶¶ 10-11, App.

210-11). This is commonsense. One of the main purposes of the EOB is to obtain a patient's signed confirmation that they had voluntarily chosen to receive hospice care from their preferred physician. (Ex. A, Jenkins Dep., App. 105:17-21, 106:1-7); 42 C.F.R. § 418.24(b)(1). It follows, therefore, that if the physician's name was not on the EOB at the time the patient signed it, the patient did not and could not have provided such written confirmation of their election, whatever it may be. (Ex. D, Kinard Decl., ¶¶ 11-12, App. 215). This is in direct violation of Medicare's rules and regulations, which requires any changes to the physician information to be on a new EOB signed by the patient. *See, e.g.,* 42 C.F.R. § 418.24(b)(1) and (h). Had the altered EOB been submitted to Medicare for reimbursement (which, thankfully, it was not), it could have resulted in, among other things, Amedisys being unable to participate in the Medicare program and/or obtain reimbursements for its services. (Ex. A, Jenkins Dep., App. 103:23-25, 104:7-14). While Plaintiff self-servingly contends that she did not know her actions were improper at the time—a fact that is not only irrelevant, but also belied by the compliance training she admits to receiving—Plaintiff admitted to Amedisys the same day she committed the violation that she made a mistake and acknowledged that what she had done was improper. (Ex. A, Jenkins Dep., App. 112:9-10, 115:8-15).

It is well established that deficient performance, including policy violations, is a legitimate, non-discriminatory reason for terminating employment. *Davis v. Farmers Ins. Exch.*, 372 Fed. Appx. 517, 519 (5th Cir. 2010) ("violation of company policy is undoubtedly a legitimate reason for discharge."); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge."); *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) ("poor job performance" was a legitimate, non-discriminatory reason for termination); *Dillard v. City of Austin, Tx.,* No. A-14-CV-0007-ML, 2015

WL 4479055, at *7 (W.D. Tex. July 22, 2015), *aff'd sub nom. Dillard v. City of Austin, Texas*, 837 F.3d 557 (5th Cir. 2016) ("Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law."). Accordingly, even assuming, *arguendo,* that Plaintiff could establish a *prima facie* case, the burden would shift back to her to establish pretext.

### b.    *Plaintiff Lacks Evidence of Pretext.*

To establish pretext for her disability discrimination claim, Plaintiff must present evidence demonstrating that her MS was a "motivating factor" and "play[ed] a role in [Amedisys'] decision making process and ha[d] a determinative influence on the outcome." *Delaval.*, 824 F.3d at 479-80 (citation omitted).  Here, no such evidence exists.

Courts "do not view the discrimination laws as vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997). "Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide." *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (citation omitted). Indeed, "[a]s long as its reason for terminating [Plaintiff] was not illegal, [Amedisys] could have fired [Plaintiff], an at-will employee," for any number of reasons or "for no reason at all." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003). "The single issue for the trier of fact is whether [Amedisys] … was motivated by discrimination." *Deines*, 164 F.3d at 281. *See also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."); *Republic Ref.*, 924 F.3d at 97 ("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.").

As established above, Amedisys terminated Plaintiff's employment because she improperly altered an EOB on January 5, 2021. (Ex. A, Jenkins Dep., App. 132:21-133:16, Ex. A-7, App. 191; Ex. C, Brady Decl., ¶ 12, App. 211). Plaintiff herself repeatedly admitted that she made a mistake and did follow the proper protocols with respect to the EOB.   (Ex. A, Jenkins Dep., App. 112:9-10, 115:8-15).  With this undisputed backdrop, there is simply no evidence that Amedisys was motivated to terminate Plaintiff's employment *because* she has MS.  *Wal-Mart Stores, Inc.,* 121 S.W.3d at 740 ("The relevant inquiry is not whether the complaints made against Canchola were a pretext, but what they were a pretext *for*. Canchola offered no evidence to show that Wal-Mart management was motivated to terminate him *because* of his heart condition.") (emphasis in original). On the contrary, the evidence establishes that Amedisys terminated Plaintiff's employment because of her actions with respect to the EOB. In fact, there is no evidence that Walker—the individual who decided to terminate Plaintiff's employment—even knew of Plaintiff's disability or request for an accommodation.  *See, e.g., Brown v. Coulston*, 463 F. Supp. 3d 762, 783 (E.D. Tex. 2020) (without knowledge of an employee's disability, an employer could not have discriminated against the employee by reason of his disability); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir.1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."). Put simply, there is no evidence of pretext and summary judgment is proper on Plaintiff's disability discrimination termination claim.

> **2.**   ***There Are No Genuine Issues Of Fact As To Plaintiff's Hostile Work Environment Claim.***

Aside from the fact that Plaintiff has failed to exhaust any claim related to hostile work environment, Plaintiff has not articulated a single fact plausibly supporting such a claim. To

establish a hostile-work-environment claim under the ADA, Plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment based on her disability; (3) the harassment affected a term, condition, or privilege of employment; and (4) Amedisys knew or should have known of the harassment and failed to take prompt, remedial action. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470–71 (5th Cir. 2021). "[H]arassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). In determining whether harassment is sufficiently pervasive or severe, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Thompson*, 2 F.4th at 471 (citing to *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) do not suffice to alter the terms and conditions of employment." *Id.*

Here, Plaintiff did not testify to any harassing behavior other than the denial of her preferred accommodation. (Ex. A, Jenkins Dep., App.73:21-74:25, 75:5-9, 119:11-17, 127:18-23). And prior to and after her initiation of the interactive process, there is no evidence that any of Plaintiff's supervisors were even aware of her medical condition. (Ex. A, Jenkins Dep., App. 64:22-65:15; Ex. A-3, App. 179; Ex. B, RTA No. 17, App. 195; Ex. B, Brady Decl., ¶¶13-14, App. 211). Thus, it is axiomatic that Plaintiff could not have been subject to any hostile work environment due to her disability because no individual who presumably would have harassed her had any knowledge of any such disability. Moreover, absent any specific allegations of harassment, Plaintiff cannot establish that she was subject to unwelcome harassment, that the harassment was based on her disability, or that there is any basis for Amedisys to be responsible

for such harassment. As such, and in addition to her failure to exhaust, this Court should dismiss Plaintiff's hostile work environment claim.

### 3. *There Is No Genuine Issue Of Fact As To Plaintiff's Retaliation Claim.*

In a retaliation case, Plaintiff must first make a *prima facie* showing: (1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Pineda v. United Parcel Serv.*, 360 F.3d 483, 487 (5th Cir. 2004). If Plaintiff meets her *prima facie* burden, the burden then shifts to Amedisys to demonstrate a legitimate, non-retaliatory purpose for the employment action. *Id.*; *Lawson v. Parker Hannifin Corp.*, 614 Fed. Appx. 725, 730 (5th Cir. 2015); *Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 376 (5th Cir. 2007). "If [Amedisys] does so, the burden shifts back to the employee to demonstrate that the stated reason is a pretext for retaliation." *Ameen*, 226 Fed. Appx. at 376. *See also Pineda*, 360 F.3d at 487. "To demonstrate pretext, [Plaintiff] must show that the adverse employment action would not have occurred 'but for' her protected conduct." *Ameen*, 226 Fed. Appx. at 376. *See also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013); *Pineda*, 360 F.3d at 487; *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 497 (Tex. App.— Amarillo 2009, pet. denied).

### a. *Amedisys Has A Legitimate, Non-Retaliatory Reason For Terminating Plaintiff's Employment.*

As fully set forth in Section III(D)(1)(a), *supra*, Amedisys terminated Plaintiff's employment because she admittedly violated Amedisys' policies. (Ex. A, Jenkins Dep., App. 110:15-18, 111:23-112:7; 116:25-117:13; Ex. A-6, App. 190; Ex. B, RTA No. 13, App. 194; Ex. A-7, App. 191; Ex. C, Brady Decl., ¶¶ 10-11, App. 210-11). As with Plaintiff's discrimination claim, "performance deficiencies are a legitimate, non-retaliatory reason for discharge." *Walker v. Hitchcock Indep. Sch. Dist.*, 508 Fed. Appx. 314, 319 (5th Cir. 2013); *see also Arensdorf v.*

*Geithner*, 329 Fed. Appx. 514, 517 (5th Cir. 2009) (holding "deficient job performance" constituted a legitimate, non-retaliatory reason for termination); *Messick v. Sears, Roebuck & Co.*, 89 F.Supp.2d 848, 850 (W.D. Tex. 2000) (same); *White v. Denton County*, 655 Fed. Appx. 1021, 1024 (5th Cir. 2016) (violation of policy was legitimate, non-retaliatory reason for termination); *Puleo v. Texana MHMR, Ctr.*, 187 F.Supp.3d 769, 785 (S.D. Tex. 2016) (same); *Arismendiz v. Univ. of Tex. at El Paso*, 536 F.Supp.2d 710, 717 (W.D. Tex. 2008) (same). Thus, even assuming Plaintiff could establish a *prima facie* case of retaliation, the burden remains with her to establish pretext—a burden she cannot meet.

### b.   *Plaintiff Lacks Evidence of Pretext.*

To establish pretext, Plaintiff has the burden of proving that "but for" engaging in the protected activity, she would not have been terminated.  *Nassar*, 133 S.Ct. at 2534; *Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007) ("'The proper standard of proof . . . [for] a Title VII retaliation claim is that the adverse employment action . . . *would not have occurred 'but for' [the] protected conduct*.'" (citation omitted; emphasis in original)). This requires Plaintiff to "demonstrate 'a conflict in substantial evidence on [the] ultimate issue' of 'but for' causation. Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) (internal citation omitted).

The only protected activity in which Plaintiff arguably engaged was her December 2020 request for an accommodation. Nonetheless, there is no evidence demonstrating that Plaintiff's employment would not have been terminated *but for* her request for a reasonable accommodation. To the contrary and as repeatedly established above, Amedisys legitimately and lawfully terminated Plaintiff's employment for backdating an EOB and improperly altering its contents. (Ex. A, Jenkins Dep., App. 132:21-133:16, Ex. A-7, App. 190; Ex. C, Brady Decl., ¶¶ 10-11, App.

210-211). Plaintiff admits that she made a "huge mistake" and failed to follow proper protocols pertaining to the EOB.  (Ex. A, Jenkins Dep., App. 112:9-10, 115:8-15). There is zero evidence that Plaintiff's accommodation request—as opposed to her involvement in altering an EOB—were the reason Amedisys terminated her employment.

Moreover, the fact that Plaintiff requested an accommodation a month before Amedisys terminated her employment does not establish pretext.  *See Strong*, 482 F.3d at 808 ("we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers."); *Rutland-Simpson v. Eli Lilly & Co.*, 940 F. Supp.2d 504, 520-21 (S.D. Tex. 2013) (holding temporal proximity and knowledge of protected activity are insufficient to establish pretext for retaliation claim); *Jones v. Cont'l Airlines, Inc.,* No. H-04-2246, 2005 WL 2233619, at *1 (S.D. Tex. Sept. 14, 2005) (granting summary judgment on FMLA retaliation claim even though protected activity occurred two days before termination of employment). In any event, the temporal proximity between her accommodation request and her termination is not surprising considering that Plaintiff altered the EOB after Amedisys denied her accommodation request.

It is undisputed that employers are occasionally forced to remove employees for poor performance and such action is not and should not be prevented simply because such an employee has engaged in protected activity.  *See Strong*, 482 F.3d at 808 (holding employers are not precluded from removing a deficiently performing employee simply because the employee engaged in a temporally close protected activity). Put simply, Amedisys presented an undisputed legitimate, non-retaliatory reason for terminating Plaintiff's employment, and Plaintiff unequivocally lacks any evidence establishing pretext.  Thus, Amedisys is entitled to summary judgment on Plaintiff's retaliation claim.  *Ameen*, 226 Fed. Appx. at 377 (affirming dismissal of

retaliation claim because plaintiff who admitted violating policy could not establish pretext).

## IV.

## <u>CONCLUSION AND PRAYER</u>

For the forgoing reasons, the Court should grant this *Motion*, dismiss Plaintiff's *Complaint*

with prejudice, and grant any further relief which the Court determines Amedisys is justly entitled.


Respectfully Submitted,


 /s/ Jason D Keck
Arthur V. Lambert
ATTORNEY-IN-CHARGE
Texas State Bar No. 11841250
500 N. Akard Street, Suite 3550
Dallas, TX  75201
Tel: (214) 220-9100
Fax: (214) 220-9122
FISHER & PHILLIPS LLP
alambert@fisherphillips.com

Jason D Keck (*pro hac vice*)
Scott C Fanning (*pro hac vice*)
FISHER & PHILLIPS LLP
10 S. Wacker Dr., Ste. 3450
Chicago, IL 60606
Tel:  (312) 346-8061
Fax:  (312) 346-3179
jkeck@fisherphillips.com
sfanning@fisherphillips.com


**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that I filed this *Brief in Support of Defendant's Motion for Summary Judgment* on March 6, 2023, using the Court's Electronic Filing System which will send notification of this filing upon all registered users, including the following parties:

W.D. MASTERSON
3141 Hood Street, Suite 500
Dallas, TX 75219
(214) 969-9099 - Telephone
(214) 953-0133 - Fax
wdm@kilgorelaw.com

**ATTORNEY FOR PLAINTIFF**

         */s/ Jason D Keck*
         Jason D Keck